COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Coleman and Senior Judge Cole
Argued at Richmond, Virginia


ALEXANDRIA KITCHEN & BATH STUDIO, INC. AND
 HARTFORD UNDERWRITERS INSURANCE COMPANY
                                     MEMORANDUM OPINION[*] BY
v.    Record No. 2259-96-3          JUDGE MARVIN F. COLE
                                         JULY 29, 1997
GARY HARE


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Benjamin J. Trichilo (Trichilo, Bancroft,
              McGavin, Horvath & Judkins, P.C., on
              briefs), for appellants.

              George L. Townsend (Chandler, Franklin &
              O'Bryan, on brief), for appellee.


     Alexandria Kitchen & Bath Studio, Inc. (employer) and

Hartford Underwriters Insurance Company (Hartford) appeal a

decision of the Workers' Compensation Commission (commission)

denying their application to terminate Gary Hare's workers'

compensation benefits.  Employer and Hartford contend that the

commission erred in finding that Hare's settlement of a

third-party tort claim without the consent or knowledge of

employer or Hartford did not necessitate a termination of Hare's

workers' compensation benefits, and that such settlement did not

prejudice their right of subrogation against the third-party

tortfeasor.

     We find that the evidence proved that Hare effected a

_____

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

settlement of his third-party claim and released the third-party tortfeasor without informing employer or Hartford of the terms of the proposed settlement, thereby prejudicing their right of subrogation against the third-party tortfeasor as a matter of law. Accordingly, we find that the commission erred in not terminating Hare's workers' compensation benefits, and we reverse the commission's decision.

## I.

On January 20, 1995, Hare sustained injuries as the result of an automobile accident which occurred in the course of Hare's employment. On March 8, 1995, pursuant to a memorandum of agreement between Hare and employer, the commission entered an award providing Hare with temporary total disability benefits and medical expenses. As of July 26, 1995, Hartford had paid Hare a total of $86,438.54 in disability and medical benefits.

As a result of the automobile accident, Hare asserted a tort claim against the driver of the other vehicle, Kristen Deal. Omni Insurance Group (Omni) insured Deal for liability with a policy limit of $25,000. Hare also had his own liability policy, which provided underinsured motorist coverage through Allstate Insurance Company (Allstate).[1]

Anthony Smith, a claims specialist employed by Hartford,

---

[1] The parties stipulated that employer and Hartford were not entitled to assert any subrogation lien against the uninsured motorist coverage because the accident occurred prior to the enactment of Code § 65.2-309.1.

testified that Hartford did not authorize any person associated with employer to settle or compromise Hartford's lien. Smith acknowledged that he had discussed Hartford's lien with James Turner, Hare's counsel in the third-party claim. However, Smith denied that Turner ever offered $16,667 to Hartford from the underlying liability limits of the Omni policy. Rather, Smith stated that Turner offered Hartford $5,000 to waive its lien, and Turner told Smith that if Hartford did not take the $5,000, Hare might declare bankruptcy. Hartford rejected the $5,000 offer. Smith stated that Hartford never authorized Turner or Hare to release Deal, nor did Turner or Hare ever request such authorization prior to Hare signing the release on or about August 8, 1995. Hartford turned over the protection of its lien to William Korth, Hartford's house-counsel, in late July or early August 1995.

Korth testified that Hartford referred this case to him at the end of July 1995. Korth stated that when he first spoke to Turner, Turner reiterated the $5,000 offer and said that Hare might declare bankruptcy if Hartford did not accept the offer. On August 2, 1995, Korth sent a letter to Omni's registered agent, notifying Omni of Hartford's subrogation lien. At that time, Turner had increased his offer to compromise Hartford's lien to $7,500. In an August 2, 1995 letter, Korth rejected the $7,500 offer made by Turner. On August 8, 1995, Korth received a letter from Turner via fax indicating that Hare had settled his

3

third-party claim against Deal for the liability policy limit of $25,000, plus $75,000 from Allstate. The letter indicated that $16,667.67 would be paid to Hartford in satisfaction of its lien. Hare stipulated that he signed a release of all claims releasing Deal from any further liability on or about August 8, 1995.

On August 8, 1995, Korth wrote to Turner, stating that the settlement occurred without Hartford's knowledge, consent, or approval. On August 15, 1995, employer/insurer filed an application to terminate Hare's workers' compensation benefits based upon his settlement of the third-party claim without Hartford's consent or approval. Korth testified that Hartford never authorized Hare to sign the release of all claims against Deal, nor did Turner or Hare ever request such authorization. Korth contended that he did not try to determine if Deal had additional assets because he did not have sufficient time to do so between receiving the file on July 26, 1995 and the settlement on August 8, 1995. An August 15, 1995 letter from Omni to Korth indicated that Omni settled the third-party claim on July 24, 1995 without any knowledge of Hartford's lien.

Turner testified that he knew Hartford was asserting its $86,438.54 lien before he settled the third-party claim. Turner contended that Korth verbally acknowledged to him that Hartford was only entitled to the $16,667. Turner admitted that Hartford did not authorize Hare to sign the release of all claims against Deal. Turner stated that he requested authorization from Korth

4

for Hare to sign the release, but Hartford refused to give such authorization. Korth denied that Turner ever made such a request. Turner's disbursement sheet reflected that the settlement was completed on August 8, 1995. On August 10, 1995, Turner tendered a $16,667 check to Hartford through Korth. Turner stated that he had informed Korth of the availability of the $16,667 before the settlement. Smith and Korth denied that Turner or Hare had ever offered the $16,667 prior to the settlement. Turner stated that prior to the settlement, he had also informed Korth that his investigation had revealed that Deal had no assets other than the $25,000 liability policy. Korth testified that prior to August 8, 1995, he and Turner never discussed any information concerning an investigation of Deal's assets, other than her liability insurance policy. Turner testified that Deal committed suicide.[2]

Hare testified that he did not personally obtain written consent from employer to settle his third-party claim before August 8, 1995, nor did he obtain Hartford's permission to settle his third-party claim.

## II.

The deputy commissioner found that Hartford knew about Hare's third-party claim against Deal prior to the settlement.

---

[2]The deputy commissioner allowed Turner's hearsay testimony concerning his investigation of Deal's assets and her death not for the truth of the matters asserted but to complete the record and to show Turner's understanding of Deal's assets.

The deputy commissioner found that the settlement occurred on or about July 24, 1995 based upon Omni's letter, and that Hare executed a full release of Deal on August 8, 1995. Relying upon Korth's testimony, the deputy commissioner found that the settlement was made without Hartford's consent or knowledge, which consent Hartford did not unreasonably withhold. Moreover, the deputy commissioner found no evidence that employer consented to the settlement prior to its occurrence. The deputy commissioner also found that Hare's settlement impaired Hartford's right of subrogation as a matter of law, finding that Hartford did not have to prove as a matter of fact that its ability to recover from Deal had been diminished. Accordingly, the deputy commissioner terminated Hare's workers' compensation benefits.

The full commission reversed the deputy commissioner's decision. Relying upon Wood v. Caudle-Hyatt, Inc., 18 Va. App. 391, 444 S.E.2d 3 (1994), the commission concluded that Hartford's subrogation rights were not prejudiced by the settlement between Hare and Deal. The commission found that Hartford did not object to the terms of the settlement, of which it was made aware, did not attempt to intervene in the third-party proceedings, did not refer the matter to Korth until late July 1995, and did not make any investigation into Deal's assets. Based upon these findings, the commission denied the application seeking to terminate Hare's compensation benefits.

In addition, the commission found that Hartford had effectively communicated to Hare that the terms of the settlement were appropriate to protect its subrogation rights, because Hartford received the $16,667 and converted that money to its own use.

III.

A claim for workers' compensation benefits operates as an assignment to the employer of any right to recover damages which the injured employee may have against any other party for such injury. See Code § 65.2-309(A). "[T]he employee may not pursue his common law remedy in such a manner or settle his claim to the prejudice of the employer's subrogation right and thereafter continue to receive workers' compensation benefits." Wood, 18 Va. App. at 397, 444 S.E.2d at 7.

> The employee necessarily prejudices his employer's subrogation rights and, thus, is barred from obtaining or continuing to receive benefits under a workers' compensation award when an employee settles a third-party tort claim without notice, or without making a claim for workers' compensation benefits, or without obtaining the consent of the employer.

Id. "This is especially true when an employee settles a third-party claim for less than the potential amount of workers' compensation coverage. In such situations, the employer's rights are significantly impaired." Id. at 398, 444 S.E.2d at 7.

In Wood, the employee promptly notified the employer by certified mail of the terms of the proposed third-party settlement, which was in excess of the workers' compensation benefits that the employee could receive, and the employee requested the employer's consent or objection within ten days. Id. at 398, 444 S.E.2d at 7. Based upon this evidence, we found that the employer was afforded every opportunity to protect its

8

subrogation rights, and, therefore, it failed to prove that it was prejudiced by the settlement.

The facts in Wood are distinguishable from those in this case. Here, no credible evidence proved that Hare notified employer or Hartford of the specific terms of the proposed settlement prior to July 24, 1995, the uncontradicted date upon which Hare effected the settlement with Omni, or even prior to August 8, 1995, the date upon which settlement proceeds were disbursed and Hare released Deal. In Wood, unlike this case, the evidence showed that the employer was given the opportunity to object or participate in the settlement and was informed of the terms of the settlement. Therefore, unlike the situation in Wood, Hare's unauthorized settlement of his third-party claim necessarily prejudiced employer and Hartford by depriving them of the opportunity to protect and assert their subrogation right against Deal.

The commission erred in taking into account the fact that Hartford and employer did not intervene in the third-party claim. We have previously held that an employer who knows of a third-party action and does not file a pleading to intervene is not estopped from seeking termination of the employee's workers' compensation benefits. See Ball v. C.D.W. Enterprises, Inc., 13 Va. App. 470, 474, 413 S.E.2d 66, 69 (1992). See also Safety-Kleen Corp. v. Van Hoy, 225 Va. 64, 71, 300 S.E.2d 750, 754 (1983). The fact that an employer knows about a pending

9

third-party claim is not the relevant inquiry. See Barnes v. Wise Fashions, 16 Va. App. 108, 111, 428 S.E.2d 301, 302 (1993). Rather, the issue is whether the employer had knowledge of the terms of the proposed third-party settlement prior to its completion, such that the employer had the opportunity to assert and protect its subrogation right. Moreover, contrary to the commission's finding, no credible evidence showed that Hare ever instituted a third-party lawsuit against Deal or that any suit was pending in which employer could have intervened. As in Barnes, the uncontroverted evidence in this case proved that Hare first notified employer and Hartford of the third party settlement after it had been effected on July 24, 1995. In addition, Hare's argument that employer was not prejudiced because Deal did not have any assets other than the liability insurance policy is without merit. Hare extinguished his claim against Deal before its value could be tested either by himself or his subrogees. See Ball, 13 Va. App. at 474, 413 S.E.2d at 69. Any evidence that a claim against Deal was valueless was speculative at best. See id. Thus, the commission erred in considering such evidence as a factor in finding that employer failed to prove it suffered prejudice as a result of the unauthorized settlement. "The rule is well-settled and plain. [Hare] forfeited his right to further compensation by unilaterally depriving the employer and the insurer of their right to seek reimbursement from the third [party]." Id. at

10

474–75, 413 S.E.2d at 69.

For these reasons, we reverse the commission's decision and direct the commission to enter an order consistent with this opinion.

Reversed.